**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric W. Bright,<br><br>    Plaintiff,<br><br>vs.<br><br>Mercer Advisors Inc.,<br><br>    Defendant. | No. 09-cv-2196-PHX-GMS<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment (Doc. 40) filed by Defendant Mercer Advisors, Inc. ("Mercer"). For the reasons set forth below, the Court grants Defendant's motion.

**BACKGROUND**

Plaintiff Eric W. Bright ("Bright") filed a Complaint alleging retaliation, discrimination in violation of Title VII of the Civil Rights Act of 1964, and breach of contract.[1] Plaintiff began working for Mercer as a Mail Room Manager in December 2007.

---

[1] Local Rule of Civil Procedure 56.1(b) requires a "party opposing a motion for summary judgment [to] file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact." "Each additional fact must be set forth in a

(Doc. 41). Plaintiff's duties included managing Mercer's mail room and distribution operations; creating a system for inbound and outbound packages; assisting other departments with large printing and binding projects; and generally assisting other departments as needed.

On July 28, 2008, Jennifer Lewis, Concierge Department Manager, questioned Plaintiff in a series of emails about some packages that had been mis-shipped by Plaintiff's department. Plaintiff thought Ms. Lewis was "nitpicky" and demonstrating "rude action" toward him so he confronted her in person. (Doc. 41, Ex. B at 69:24 to 72:6, 72:22 to 73:3, 73:22 to 74:14). Thereafter, Plaintiff told Greg Cox in Human Resources that Ms. Lewis was "either singling [him] out or harassing [him] or something." (*Id*. at 74:15-21). The day after the incident, Plaintiff sent an email to his supervisor, Chris Weill, stating that he was walking off the job as a result. A few days later, on August 1, 2008, Plaintiff complained to Ralph Ujano, Executive Vice President of Professional Services, about Ms. Lewis.

Around the same time, some Mercer employees found that their iPods were missing from their desks. Mr. Cox told Plaintiff that Mercer had reason to suspect that one of its part-time employees, Parker Duncan, the son of Bryan Duncan, Vice President of Professional Services - West, may have been responsible for the missing iPods. Parker Duncan was terminated on August 15, 2008. Bright suspects that Bryan Duncan fired him on February 11, 2009 because he mistakenly believed that Plaintiff was somehow responsible for his son's termination from Mercer.

On February 10, 2009, Nancy Somers, OnTrack Customer Support Technician, told

---

separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support." (*Id*.). Under Rule 56.1(b), the moving party's separate statement of facts must be "*deemed admitted . . . if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts*." Plaintiff has failed to provide a controverting statement of facts that either disputes Defendant's statement of facts or references specific admissible portions of the record that establish a genuine issue of material fact. Accordingly, the Court must treat Defendant's statement of facts as admitted for purposes of this motion.

1  Plaintiff in an email that "[i]t's becoming extremely important to get the 40 manuals ASAP."
2  (Doc. 41, Ex. B at 110: 8-23, Ex. M). Plaintiff responded, "[i]f we seem to be running a little
3  slow for your time frame, the printers and the binding machine are open for your use." (Doc.
4  41, Ex. M). On the same day, Bryan Duncan asked Plaintiff to produce the 40 manuals by
5  a certain date. Plaintiff responded, via email, that this was just another opportunity to
6  disrespect the Shipping Department. He further stated, "I'll take it to [President Dave]
7  Barton, and if necessary I'll go to the State of Arizona. Nobody tries to save this company
8  money more than me. You are also welcome to stop using this department altogether." (*Id.*).
9  After sending the email, Plaintiff went to Mr. Ujano's office and used "inappropriate
10 language" that was "deplorable in nature," and threatened to do bodily harm to Bryan
11 Duncan. (Doc. 1, ¶ 29; Doc. 41, Ex. B at 114:19 to 115:5, 116: 1-13). Plaintiff then walked
12 out of Ujano's office and left the building before the workday was over. The next day,
13 Plaintiff returned to the office, refused requests by Human Resources to speak with him,
14 returned the company property in his possession, and never returned to Mercer.

## DISCUSSION

### I. Legal Standard

17      Summary judgment is appropriate if the evidence, viewed in the light most favorable
18 to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact
19 and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).
20 Substantive law determines which facts are material and "[o]nly disputes over facts that
21 might affect the outcome of the suit under the governing law will properly preclude the entry
22 of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact
23 issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the
24 nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
25 (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof
26 at trial as to an element essential to its case, and that party fails to make a showing sufficient
27 to establish a genuine dispute of fact with respect to the existence of that element, then
28 summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan*

1  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477
2  U.S. 317, 322–23 (1986)).

3  **II. Analysis**

4  **A. Counts 1 & 2: Retaliation Claims**

5  Within Counts 1 and 2, Plaintiff sets forth three separate retaliation claims.
6  Specifically, Plaintiff alleges that he was terminated in retaliation for 1) complaining to Mr.
7  Ujano that Ms. Lewis, the Registration Department Supervisor, was singling him out for
8  unfavorable treatment (Doc. 1, ¶¶ 18–22); 2) making a written complaint to Mr. Bryan
9  Duncan that Ms. Somers had singled him out, and that he was going to seek an investigation
10 through Mercer's CEO or an agency of the State of Arizona authorized to investigate charges
11 of discrimination (*Id.* at ¶¶ 25–34); and 3) because Mr. Bryan Duncan mistakenly believed
12 that Plaintiff was responsible for the termination of his son from Mercer. (*Id.* at ¶¶ 35–52).

13 To make a prima facie case of retaliation, Plaintiff must produce evidence that 1) he
14 engaged in a protected activity, 2) Defendant subjected him to a materially adverse action,
15 and 3) that there was a causal link between the protected activity and the adverse action. *See*
16 *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). Defendant seeks summary
17 judgment on all of Plaintiff's retaliation claims by asserting that Bright has failed to establish
18 the first prong – engagement in a protected activity.[2]

19 Protected activity includes the filing of a charge or a complaint, or providing
20 testimony regarding an employer's alleged unlawful practices, as well as engaging in other
21 activity intended to "oppose[ ]" an employer's discriminatory practices. 42 U.S.C. § 2000e-
22 3(a). In addition, the plaintiff must make some showing sufficient for a reasonable trier of
23 fact to discern that the defendant was made aware that the plaintiff had engaged in protected

---

[2] With respect to the first retaliation claim, Defendant additionally claims that Bright has failed to establish the second prong – that Mercer subjected Plaintiff to an adverse employment action as a result of his complaining to Mr. Ujano about Ms. Lewis' discriminatory practices. In light of the Court granting summary judgment on the basis of the Plaintiff's failure to establish the first prong of retaliation, it is unnecessary to discuss the second prong.

- 4 -

activity. *See Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 1185, 1197 (9th Cir. 2003); *EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008 (9th Cir. 1983). Despite his suggestion in the pleadings, Bright has presented absolutely no evidence that indicates that he ever complained to Mercer or to anyone else about race discrimination until he filed his EEOC Complaint. Indeed, Bright specifically admitted in his deposition that he never raised the issue of race discrimination or racial harassment with anyone during the course of his employment at Mercer. *See* Doc. 41, Ex. B, 72:13-21, 74:15-21, 143:11-14.

Specifically, with regard to his first claim, Plaintiff alleges that Mercer retaliated against him for complaining to Mr. Ujano that Ms. Lewis had singled him out for unmerited complaints. (Doc. 1, ¶¶ 18–25). Plaintiff alleges that the series of emails Ms. Lewis sent him about packages that had been mis-shipped by Plaintiff's department were "nitpicky" and demonstrated "rude action" toward him. (Doc. 41, Ex. B, 69:24 to 72:6). Plaintiff subsequently told Greg Cox in Human Resources and Mr. Ujano that Ms. Lewis was "either singling [him] out or harassing [him] or something." However, Plaintiff admits in his deposition testimony that he never told either Mr. Cox or Mr. Ujano that anything Ms. Lewis did had anything to do with Plaintiff's race. (*Id.* at 72:13-21, 74:15-21, 131:12-16). Plaintiff further testified that after his meeting with Mr. Cox, in which Mr. Cox agreed to talk with Ms. Lewis about the issue, Ms. Lewis stopped the short, rude behavior toward him. (*Id.* at 74:15 to 75:13, 130:3-13). Plaintiff's assertion that "bigotry is subtle" and that he "just kn[e]w [Ujano] didn't like [him] from that point on," without more, does not constitute an unlawful employment practice. (*Id.* at 131:6-8).

Similarly, with respect to his second retaliation claim, Plaintiff asserts that his protected activity was his written complaint to Mr. Duncan that Ms. Somers engaged in a discriminatory act against him, and that he was going to seek an investigation through Mercer's CEO or an agency of the State of Arizona authorized to investigate charges of discrimination. (Doc. 1, ¶ 25–34). However, in his own deposition, Plaintiff again admits that he never raised the issue of race discrimination or an investigation by an agency of the State of Arizona authorized to investigate such charges in his communication with Mr.

1  Duncan, and nothing in Plaintiff's email to Mr. Duncan refers to Plaintiff's race or color.
2  (Doc. 41, Ex. M). Moreover, Plaintiff admits that he never told Mr. Ujano that Ms. Somers
3  discriminated against him because of his race, and that he never raised the issue of race with
4  Mr. Ujano either. (Doc. 41, Ex. B, 134:10-22).

5  Finally, with respect to his third retaliation claim, Plaintiff alleges that he was
6  terminated "in retaliation for Mr. Duncan's unsubstantiated beliefs that Parker was
7  terminated for a theft issue." (Doc. 1, ¶ 49). Plaintiff alleges that he was denied the right to
8  participate in any follow-up investigation regarding Parker's termination and to convey that
9  Parker was actually terminated in good standing and for lack of work. (*Id.* at ¶ 50). Again,
10 Plaintiff's allegation fails to identify any protected activity under Title VII. Furthermore,
11 Plaintiff admitted under oath that this retaliation claim was not based on racial harassment
12 or discrimination, confirming instead that "it has nothing to do with race." (Doc. 41, Ex. B.
13 136:7 to 137:20).

14 These answers at Bright's deposition are conclusive admissions that he did not make
15 a race-based complaint prior to his Commission charge. The deposition evidence
16 unambiguously compels the conclusion that Bright had not engaged in a "protected activity"
17 until he filed his EEOC Complaint on April 7, 2009, nearly two months after leaving Mercer.
18 Bright has the obligation to show by a preponderance of the evidence that his engagement
19 in protected activity under § 2000e-3 was one of the reasons for the alleged adverse
20 employment action, and that but for such an activity he would not have faced such action.
21 *See Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir. 1982). He has failed to do so
22 here. Plaintiff's complaints about short, rude or otherwise disrespectful emails directed at his
23 department, which are not based on unlawful unemployment practices proscribed by Title
24 VII, are not "protected activities" within the meaning of Title VII's retaliation provisions.
25 *See Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) (plaintiff's complaints
26 about radio show format change were based on personal reasons, not discriminatory reasons).
27 Additionally, it would be unreasonable to conclude that Mercer could discern that Plaintiff's
28 complaints were based on his belief that Defendant was engaging in race discrimination or

- 6 -

harassment under Title VII. Because Plaintiff has offered no evidence that he engaged in protected activity under Title VII to satisfy the first element of a prima facie case of retaliation, Defendant is entitled to summary judgment on these claims.

### B. Count 3: Race Discrimination

Plaintiff claims he was terminated illegally because of his race and seeks to recover damages pursuant to Title VII. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on account of race. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."). As the Supreme Court set forth in *McDonnell Douglas*, there are four elements a plaintiff must satisfy in order to establish a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Id.*; *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). The proof required to establish the prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Nevertheless, Plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent." *Vasquez*, 349 F.3d at 640. In the event that the plaintiff is able to establish a prima facie case, "the burden of production, but not persuasion" then shifts to the defendant to offer a legitimate non-discriminatory reason for the employment action. *Chuang v. Univ. of Cal.-Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). If the employer is able to articulate a non-discriminatory reason, the burden shifts back to the plaintiff, who must be "afforded a fair opportunity to show that [the] stated reason for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. If the plaintiff wishes to show indirectly that the employer's reason is "unworthy of credence," the plaintiff's evidence must be "specific" and "substantial" in order to create a triable issue.

1  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). The Ninth Circuit has
2  refused to find a "genuine issue" where the only evidence presented is "uncorroborated and
3  self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

4  Defendant contends that Plaintiff has not established a prima facie case of racial
5  discrimination under *McDonnell Douglas* because he has not demonstrated that he was
6  subject to an adverse employment action or that similarly situated individuals outside his
7  protected class were treated more favorably. To show that the employees allegedly receiving
8  more favorable treatment are similarly situated, Plaintiff "must demonstrate, at least, that [he
9  is] similarly situated to those employees in all material respects." *Moran*, 447 F.3d at 755.
10 Individuals are similarly situated when "they have similar jobs and display similar conduct."
11 *Vasquez*, 349 F.3d at 641. Employees in supervisory positions are generally deemed not to
12 be similarly situated to lower level employees. *See id.* (citing *Ward v. Procter & Gamble
13 Paper Prods. Co.*, 111 F.3d 558, 560–61 (8th Cir. 1997)). In his Response, Plaintiff concedes
14 that he was not similarly situated to Kathy Larion, Chris Weill or Blake Larion, the three
15 individuals that he initially alleged were treated more favorably than him.[3] (Doc. 42 at 10).
16 Because Plaintiff has conceded a required element for establishing race discrimination
17 pursuant to *McDonnell Douglas*, he cannot establish a prima facie case in this manner.

18 Instead, Plaintiff seeks to overcome summary judgment by establishing a prima facie
19 case through circumstantial evidence of discriminatory intent. (Doc. 42 at 10). "In lieu of
20 satisfying the elements of a prima facie case, a plaintiff may also 'simply produce direct or
21 circumstantial evidence demonstrating that a discriminatory reason more likely than not
22 motivated' the challenged decision." *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th
23 Cir. 2008) (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122–23 (9th Cir. 2004)).
24 Plaintiff appears to allege that discriminatory intent is circumstantially evident from the fact

---

[3] In his Response Plaintiff states: "Plaintiff concedes Defendant's argument under *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634 concerning similarly situated employees with similar jobs which is one of the prongs of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 492."

- 8 -

1. that Defendant terminated Bright after he sent Bryan Duncan an email, dated February 10,
2. 2009, that he would go to the CEO of the Company, and if necessary "the State of Arizona."
3. (Doc. 42 at 10). Plaintiff further alleges that Defendant's refusal to initiate or conduct an
4. investigation into Plaintiff's allegations after he made two specific complaints gives rise to
5. an inference of unlawful discrimination. (*Id*.). However, in both his Response and his
6. deposition testimony Plaintiff repeatedly concedes that he never mentioned race in any of his
7. complaints or communications with Defendant. *See* Doc. 41, Ex. B, 72: 13-21, 74:15-21,
8. 130:14 to 132:19, 134:10-22; *see also* Doc. 41, Ex. B, 143:11-14 ("Q: At any time in your
9. employment, did you ever communicate to the company that you believed you were being
10. discriminated against because of your race? A: No."). In his Response, Bright further
11. explains that "while Plaintiff did not specifically state race in his attempt to complain,
12. Plaintiff did use phrases commonly associated with the protected class. He felt disliked. He
13. felt singled out. He complained of harassment." (Doc. 42 at 10). Plaintiff's subjective
14. feelings are insufficient to satisfy his burden of establishing that Defendant's alleged
15. termination decision[4] was more likely than not motivated by Plaintiff's race. Plaintiff has
16. further failed to provide any evidence that Defendant's alleged inaction in response to his
17. complaints was motivated by racial animus. Based on the absence of any evidence of
18. disparate treatment in the record, and Plaintiff's admissions pursuant to Local Rule 56.1(b),
19. the Court cannot make an inference of unlawful discrimination under the *McDonnell*
20. *Douglas* framework or detect any direct or circumstantial evidence of discriminatory intent.

---

[4] Defendant asserts that Plaintiff did not suffer an adverse employment action because he abandoned his job on February 11, 2009. Indeed, Plaintiff's deposition testimony supports Defendant's contention that no one at Mercer ever told him he was fired or terminated. (Doc. 41, Ex. B 108:15-17, 121:12-16). Plaintiff admitted that he refused multiple requests by Jennifer Dale, Human Resources, to speak with her in her office, returned the company property in his possession, drove away and never returned to Mercer. (*Id*. at 119:15 to 120:13, 121:7 to 122:25). Nevertheless, Plaintiff has submitted a document signed by his supervisor at Mercer indicating that his termination, effective February 11, 2009, was "involuntary." (Doc. 42, Ex. A). The Court need not determine whether or not Plaintiff was voluntarily or involuntarily terminated because his race discrimination claim fails for the independent reasons set forth above.

1 Accordingly, summary judgment on Plaintiff's race discrimination claim is proper.

2 **C. Breach of Contract**

3 Based on his Complaint, it is not readily apparent to the Court whether Plaintiff's breach of contract claim is based on Defendant's alleged retaliation against him for complaining of racial harassment or rather Defendant's alleged refusal to initiate and conduct an investigation into Plaintiff's claims. Plaintiff merely quotes Section 1.3 of the Mercer's Employee Handbook, titled "Reporting Harassing Conduct to Mercer," and asserts that "Defendant openly breached its own agreement with Plaintiff." (Doc. 1, ¶ 76). In his Response, Plaintiff clarifies that Mercer breached its contract with him by refusing to initiate and conduct an investigation into his claims. (Doc. 42 at 15). A liberal reading of Plaintiff's Complaint suggests that he complained to a Mercer supervisor regarding two incidents: 1) on July 29 and August 1, 2008, Plaintiff complained to Mr. Cox and Mr. Ujano respectively regarding Ms. Lewis' "rude" emails concerning the mis-shipping of her department's packages, and 2) on February 10, 2009, Plaintiff wrote to Mr. Duncan and explained to Mr. Ujano in person that Ms. Somers had engaged in discriminatory acts against him. With respect to the first incident, Plaintiff testified that after he complained to Mr. Cox in Human Resources about Ms. Lewis, Mr. Cox told Plaintiff that he would talk with her and if the issue was not resolved he would meet with Plaintiff and Ms. Lewis. (Doc. 41, Ex. B at 74:15 to 75:3). Plaintiff testified that, thereafter, Ms. Lewis stopped exhibiting the short, rude behavior toward him. (*Id.* at 75:4-13, 130:3-13). Thus, Plaintiff has failed to create a genuine issue of material fact regarding Mercer's alleged failure to address his complaint against Ms. Lewis.

23 Even if the Court construes Plaintiff's February 10, 2009 communication with Mr. Duncan and Mr. Ujano as a complaint, Plaintiff's own admissions undermine his claim. Plaintiff admits that in response to Mr. Duncan's emails asking Plaintiff to produce 40 manuals by a certain date, Plaintiff wrote an email to Mr. Duncan stating that this was just another opportunity to disrespect the Shipping Department. (Doc. 41, Ex. M). He further threatened to file a complaint with the CEO or the "State of Arizona". (*Id.*). After sending

the email, Plaintiff entered Mr. Ujano's office and used "inappropriate language" that was "deplorable in nature" and threatened to do bodily harm to Mr. Duncan. (Doc. 1, ¶ 29; Doc. 41, Ex. B, 114:19 to 115:5, 116:1-13). Plaintiff further admits to walking out of Mr. Ujano's office and leaving the building even though the workday was not over. (Doc. 41, Ex. B at 134:13-22). The next day, Plaintiff returned to the office, refused requests to meet with Human Resources, returned company property he possessed, and never returned to Mercer. (*Id.* at 119:15 to 120:13, 121:7 to 122:25). Thus, based on Plaintiff's own admissions there is no triable issue of fact as to whether Mercer failed to initiate an investigation into his second complaint.

Even if the Court construes Plaintiff's breach of contract claim to stem from Mercer's alleged retaliation against Plaintiff for complaining of harassment, this claim is merely a restatement of Plaintiff's retaliation claims and does not survive summary judgment for the same reasons set forth above. *See discussion supra* section II.A. Plaintiff has not satisfied his burden of creating a triable issue of fact to rebut Defendant's documented evidence that Mercer did act on Plaintiff's non-harassment complaints. Accordingly, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

## CONCLUSION

Plaintiff has not raised any issues of material fact to support his claims of retaliation, discrimination and breach of contract.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 40) is **GRANTED**.

The Clerk of the Court is directed to terminate this action.

DATED this 20th day of April, 2011.

G. Murray Snow
United States District Judge

- 11 -